UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
                                                           :
In re AIR CRASH NEAR PEIXOTO De                            :     **MEMORANDUM**
AZEVEDA, BRAZIL, on September 29, 2006                     :     **DECISION AND ORDER**
                                                           :
                                                           :     07 MD 1844 (BMC) (JO)
                                                           :
                                                           :     **\*ALL CASES\***
---------------------------------------------------------- X

**COGAN**, District Judge.

Presently before the Court are motions, from all defendants, to dismiss this multi-district litigation based upon forum non conveniens. Several defendants have also moved for a stay of discovery, and one defendant has filed a motion to strike. Because the motions to stay discovery, and the motion to strike, are predicated on the motions to dismiss, they are all considered together. For the reasons set forth below, the motion to strike is granted in part and denied in part, the motions to stay discovery are denied, and the motions to dismiss are conditionally granted.

**BACKGROUND**

**I.     The Accident**

This multi-district litigation involves claims for wrongful death brought by the surviving family members of passengers of Gol Linhas Inteligentes S.A. ("Gol") Boeing 737-800 Flight 1907, which crashed into the Amazon rainforest on September 29, 2006, killing all on board. Plaintiffs allege that the Gol flight was carrying 154 passengers and crew members and was en route from Manaus, Brazil to Rio De Janeiro, Brazil when it apparently collided with an Embraer EMB-135BJ Legacy 600 jet operated by defendant ExcelAire. The Legacy safely made an emergency landing at a Brazilian military base.

A.    **Plaintiffs**

Plaintiffs are all Brazilian citizens and residents, and the decedents they represent were all Brazilian citizens and residents at the time of their deaths.  None of the named plaintiffs are residents or citizens of the United States, nor were the decedents at the time of their deaths.

B.    **Defendants**

Defendant Honeywell is a Delaware corporation with its headquarters in Morristown, New Jersey.  The Honeywell division responsible for the design, development, certification, testing and support of aircraft avionics components has its principal facility in Phoenix, Arizona. The avionics units at issue here were designed in Phoenix and manufactured in Singapore. Honeywell also maintains a customer support facility at Embraer's manufacturing plant in Sao Jose dos Campos, Brazil.  That facility provides technical support to Embraer for Honeywell products installed on aircraft manufactured by Embraer.

Defendants Lepore and Paladino are residents of New York State and the pilots that were in control of the Legacy jet at the time of the accident (the "Legacy pilots").  Lepore and Paladino, both U.S. residents, were trained and qualified in the U.S. before traveling to Embraer's manufacturing facility in Sao Jose dos Campos, Brazil to ferry the newly manufactured plane from the facility to New York.  The ferry flight was to last two days, with an overnight layover in Manaus, Brazil for export approval.  The Legacy never made it out of Brazil.

Defendant ExcelAire is a New York corporation with its principal place of business in New York.  It is an aviation firm specializing in jet and helicopter charters, aircraft management, maintenance and sales.  The Legacy pilots were flying an ExcelAire Legacy jet at the time of the accident.

Defendants Raytheon, Lockheed Martin, and Amazon Tech (jointly the "SIVAM defendants") are all U.S. corporations and each has its principle place of business in the U.S.; Raytheon is a Delaware corporation with its principle place of business in Massachusetts, Lockheed Martin is a Maryland corporation with its principle place of business in Maryland, and Amazon Tech is a Delaware corporation with its principle place of business in Florida.  All three defendants worked on Brazil's SIVAM – the radar system for the Amazon region of Brazil.  The Brazilian government considers SIVAM to be part of its national security infrastructure.  The SIVAM defendants designed and manufactured in the U.S., at least in part, the products used in SIVAM.  All the work the SIVAM defendants did on SIVAM was at the direction of the Brazilian government; SIVAM was intended solely for operation in Brazil, was installed exclusively in Brazil, and was maintained exclusively by the Brazilian government at the time of accident.  Raytheon designed, manufactured, installed, and integrated component parts for the SIVAM; Lockheed's primary contribution to SIVAM was the FPS-17 radar unit, which it designed and manufactured; and Amazon Tech's primary contribution to SIVAM was work on the software.

Defendant ACSS is, according to the complaint, either a Delaware LLC or a Delaware Corporation with its principal place of business in Arizona.  ACSS manufactured the Traffic Alert and Collision Avoidance System ("TCAS") on board the Legacy jet.

### C.      Other Entities

A-Tech is a Brazilian technology company and parent of U.S. subsidiary, Amazon Tech. It is primarily responsible for integrating the SIVAM components to provide air traffic control services.  The company is a special purpose vehicle created specifically to integrate SIVAM.

Embraer is headquartered in Brazil, and has three manufacturing facilities located in Brazil.  Embraer is the manufacturer of the Legacy involved in the accident.  Two Embraer employees were onboard at the Legacy at the time of the accident, and conducted preflight inspections of the Legacy that day.  Embraer is also part of SIVAM.

Gol was the operator of the Boeing 737-800 that was involved in the mid-air collision. Gol is a low-cost airline commercial airline licensed by Brazilian civil aviation authorities.  It does not have any international flights to the U.S., nor is it authorized to fly in the U.S.

Brazil's Centro Integrado de Defesa Aerea e Controle de Trafego Aereo ("CINDACTA" or "Brazilian ATC") is the Brazilian government agency responsible for control of Brazilian airspace in which this accident occurred.  It operates under the auspices of the Brazilian Department of Defense, and its air traffic controllers are under the direction of the Brazilian military.  A number of CINDACTA air traffic controllers have been suspended as a result of the accident.

Brazil's Centro de Investigacao e Prevencao de Acidentes Aeronauticos ("CENIPA") is the Brazilian governmental agency responsible for investigating aviation accidents, and is currently concluding its investigation of this accident.

## II.     <u>Related Activity in Brazil and the U.S.</u>

The crash of Gol 1907 was the deadliest air disaster in Brazilian history at the time and has garnered significant attention from the Brazilian government as well as the press.  The accident is currently being investigated by CENIPA, with the assistance of the U.S. National Transportation Safety Board ("NTSB"), technical advisors from the Federal Aviation Administration (the "FAA"), the Canadian TSB, and some of the private entities connected to the crash.  CENIPA has published two preliminary reports and the investigation is in its last phase

prior to publication of a final report.  Several other Brazilian governmental agencies are also conducting or have conducted investigations of the accident, including committees formed by the Brazilian House of Representatives and Senate.  Meanwhile, in the U.S., the NTSB and the FAA have issued their own reports concerning the crash.

In addition to this multi-district litigation proceeding, a number of court proceedings have been commenced in Brazil.  A criminal proceeding is ongoing in Brazilian federal court, and multiple civil actions have been brought against Gol in Brazilian courts.  Gol has admitted that it is strictly liable for the crash under Brazilian law on a 100% liability basis for each passenger. The courts in several of these Brazilian civil cases have already awarded interim relief to plaintiffs consisting of a monthly stipend to be paid during the pendency of the action; at least one case was finally decided on the merits by an appellate court; and thirty cases had been settled by Gol as of March 10, 2008, with eleven more settlements agreed to and in the process of being finalized at that time.

### III.   Defendants' Proffered Concessions

All defendants, with the exception of the Legacy pilots and ExcelAire, have agreed as a condition of dismissal of the cases pending before this Court in favor of a Brazilian forum to do the following:

> Consent to the jurisdiction of the Brazilian courts for purposes of defending these civil actions; toll any applicable statute of limitations for a period of 120 days after dismissal of these civil actions; make available to the Brazilian courts any witnesses or documents in their possession, custody or control that the Brazilian court may deem relevant to these civil actions; and pay any post-appeal judgment stemming from these civil actions awarded against them by a Brazilian court.

ExcelAire has agreed to all of the conditions except the toll of any applicable statute of limitations, which it has not addressed.  The Legacy pilots have agreed to the domestication of

any Brazilian judgment obtained against them, which arises out of these civil actions, and have

agreed to appear for a videotaped or transcribed deposition in the U.S. pursuant to 28 U.S.C. §

1782.  The pilots have also agreed to provide evidence by letters rogatory if requested by the

Brazilian courts.

## DISCUSSION

### I.    Motion to Strike

Honeywell's motion to strike plaintiffs' use of, reference to, or reliance upon NTSB

safety recommendations stemming from the accident is granted in part and denied in part.  The

use of NTSB reports in civil litigation is governed by 49 U.S.C. § 1154(b), which provides:  "No

part of a report to the Board, related to an accident or an investigation of an accident, may be

admitted into evidence or used in a civil action for damages resulting from a matter mentioned in

the report."  Applying the plain language, the Court will not admit the report or use the substance

or conclusions of the report itself in any way.  However, the Court will take notice of the fact

that the NTSB issued a report.  There is no statutory history indicating that Congress intended to

go beyond a report itself and prevent judicial notice of the existence of a report, and the language

of the statute does not prohibit taking notice of the existence of the report. Therefore no

substance from the report will be considered in these cases, and the report itself will not be used,

but in considering defendants' forum non conveniens motions, the Court will note that the NTSB

issued a report on the accident.

### II.    Forum Non Conveniens Standard

"The principle of forum non conveniens is simply that a court may resist imposition upon

its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute,"

based on the convenience of the parties and interests of justice.  Gulf Oil Corp. v. Gilbert, 330

U.S. 501, 507, 67 S.Ct. 839, 842 (1947).  The Supreme Court set out the modern standard for

forum non conveniens in <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 102 S.Ct. 252 (1981), and

the Second Circuit has since distilled that standard into a three-step analysis.  <u>Iragorri v. United</u>

<u>Tech. Corp.</u>, 274 F.3d 65 (2d Cir. 2001).

 The <u>Iragorri</u> three-step analysis requires that the Court first determine "the degree of

deference properly accorded the plaintiff[s'] choice of forum."  <u>Norex Petroleum Ltd. v. Access</u>

<u>Indus., Inc.</u>, 416 F.3d 146, 153 (2d Cir. 2005).  Second, the Court must decide whether

defendants' proposed alternative forum, Brazil, is available and "adequate to adjudicate the

parties' dispute."  <u>Id.</u>  Third, the Court must to "balance the private and public interests

implicated in the choice of forum."  <u>Id.</u>  In applying this analysis the Court is mindful that

defendants bear the burden of persuasion on each element.[1]  <u>See</u> <u>Bank of Credit and Commerce</u>

<u>Int'l Ltd. v. State Bank of Pak.</u>, 273 F.3d 241 (2d Cir. 2001).  The extent of defendants' burden

will be determined by the amount of deference granted plaintiffs' choice of forum.  <u>Iragorri</u>, 274

F.3d 65.

 In applying the <u>Iragorri</u> factors, the Court cannot be blind to the practical realities of

cross-border litigation.  The often pejorative connotation inherent in the label "forum shopping"

is generally undeserved.  It is a fact that plaintiffs will almost always select a forum in which

they believe they will maximize their recovery, as long as they have a reasonable chance of

remaining in that forum, and that forum is often within the U.S.  Conversely, defendants will

generally seek to relegate actions to the forum in which they believe their exposure is minimized,

and that forum is often outside of the U.S.

---

[1] "[I]n the determination of a motion to dismiss for forum non conveniens, the court may consider affidavits submitted by the moving and opposing parties," <u>Vanity Fair Mills, Inc. v. T. Eaton Co.</u>, 234 F.2d 633, 645 (2d Cir. 1956), and make findings of fact, <u>Pollux Holding Ltd. v. Chase Manhattan Bank</u>, 329 F.3d 64 (2d Cir. 2003).

Assuming the requirements of Federal Rule of Civil Procedure 11 are met, as they plainly are here, there is nothing immoral or unsavory about plaintiffs making such choices or defendants seeking to undo them.  Indeed, lawyers for parties are required to use their knowledge of forum choices to advance their client's position.  See Employers Ins. of Wausau v. Fox Entm't Group, Inc., 522 F.3d 271, 276 (2d Cir. 2008) ("[a]ny lawyer who files a case on behalf of a client must consider which of the available fora might yield some advantage to his client, and thus, to that degree, engages in 'forum shopping'").  Thus, the objective of forum non conveniens analysis should not be to determine the "true" basis for a party's forum position, as that basis will almost always be to maximize or minimize recovery, but whether the confluence of private and public interest factors validates that basis in the particular case.[2]

## III.   <u>Deference Afforded Plaintiffs' Choice of Forum</u>

When a plaintiff chooses his or her home forum, it is presumed to be convenient and is afforded great deference.  Piper, 454 U.S. 235, 102 S.Ct. 252.  Conversely, "when a foreign plaintiff chooses a U.S. forum, it 'is much less reasonable' to presume that the choice was made for convenience."  Iragorri, 274 F.3d at 71 (quoting Piper, 254 U.S. at 256, 102 S.Ct. at 266).  "These presumptions, however, may not apply, either at all or with full force, to forum choices in particular cases."  Norex, 416 F.3d at 154.  For this reason, taking into account the totality of circumstances, the Court conducts a "comparative analysis of convenience and forum shopping,"

---

[2] For this reason, I put little stock in defendants' reliance on plaintiff Garcia's submissions to the Brazilian High Court of Justice, in which she identified the "well known fact that the U.S. court system . . . means a greater chance of being paid much higher compensation than the reparation granted in Brazil," or in press statements by attorneys representing plaintiffs that that the actions were brought in the U.S. because of the expected higher level of compensation, and that plaintiffs "expect to receive in US values up to six times greater than what they could get from Brazilian Justice."  That motivation is a given.  It is also a given that defendants would rather have these cases in Brazil for precisely the same reason.  All of the lawyers here are out to serve the private interests of their clients, as they should be.

id., to determine the deference due plaintiffs' choice of a New York forum on the Iragorri flexible sliding scale.

In conducting this analysis, although the methodology set forth in Iragorri is not talismanic, the Court is guided by the factors identified in Iragorri as being relevant to determining whether a plaintiff's choice of forum was genuinely motivated by convenience: (1) "the convenience of the plaintiff's residence in relation to the chosen forum," (2) "the availability of witnesses or evidence to the forum district," (3) "the defendant's amenability to suit in the forum district," (4) "the availability of appropriate legal assistance," and (5) "other reasons related to convenience or expense." Iragorri, 274 F.3d at 72. A court should be guided by the Iragorri factors, but is not required to address each of them as forum non conveniens analysis tends to be highly factual. See Norex, 416 F.3d 146.

Initially, the Court rejects defendants' arguments that plaintiffs are entitled to no deference. The Second Circuit has warned that the reduced deference granted a foreign plaintiff suing in the U.S. "'is not an invitation to accord a foreign plaintiff's selection of an American forum *no* deference since dismissal for forum non conveniens is the exception rather than the rule.'" Murray v. British Broad. Corp., 81 F.3d 287, 290 (2d Cir. 1996) (quoting R. Maganlal & Co. v. M.G. Chem. Co., 942 F.2d 164, 168 (2d Cir. 1991)). Therefore, the Court begins with the presumption that foreign plaintiffs suing in the U.S. receive some limited amount of deference and that such deference increases to the extent that the factors reveal plaintiffs' ties to the forum. See Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88 (2d Cir. 2000).

The first basis proffered by plaintiffs for granting them full deference is that Brazil and the U.S. have entered into a treaty guaranteeing Brazilian citizens equal access to U.S. courts; plaintiffs cite the Treaty with Brazil, March 18, 1829, U.S.-Brazil, art. XII, 8 Stat. 390, 392.

Article XII of the treaty confers such equality of access to the courts upon citizens of each signatory country who are "transient or dwelling" in the territory of the other.  Plaintiffs argue that the "access to courts" provision requires the application of the same forum non conveniens deference to Brazilian citizens as the Court would have applied to a U.S. citizen under the circumstances.

Although the Second Circuit has not yet had occasion to discuss the at-issue provision of the U.S.-Brazilian treaty in the context of forum non conveniens, it did address a U.S.-Venezuelan treaty containing virtually the same language and found it to support full deference to the foreign-citizen plaintiff.  Blanco v. Banco Ind. De Venez., S.A., 997 F.2d 974 (2d Cir. 1993).  The discussion of this point in Blanco is dictum as the Court, despite its awarding of deference, affirmed dismissal of the action on forum non conveniens grounds.  More importantly, the Court did not address key language used in both treaties as a condition of deference, which clearly limits the effect of the provision upon which plaintiffs rely.  See Treaty of Peace, Friendship, Navigation and Commerce, Jan. 20, 1836, U.S.-Venez, art. 13, 8 Stat. 466, 472.  Specifically, the provision in the Venezuela treaty provides that:

> Both the contracting parties promise and engage, formally, to give their special protection to the persons and property of the citizens of each other, of all occupations, *who may be in the territories subject to the jurisdiction of the one or the other, transient or dwelling therein*, leaving open and free to them the tribunals of justice, for their judicial recourse, on the same terms which are usual and customary with the natives or citizens of the country in which they may be; for which they may employ in defence [sic] of their rights, such advocates, solicitors, notaries, agents and factors, as they may judge proper, in all their trials at law; and such citizens or agents shall have free opportunity to be present at the decisions and sentences of the tribunals, in all cases which may concern them; and likewise at the taking of all examinations and evidence which may be exhibited on the said trials.

Treaty of Peace, Friendship, Navigation, and Commerce, Jan. 20, 1836, U.S. - Venez., art. 13, 8 Stat. 466, available at 1836 WL 3643 (emphasis added).

Just like the Venezuela treaty, the Brazil treaty, by its express terms, requires that the signatories' courts be open to foreign nationals who happen to be located within the territory of the other.  In other words, this provision of the treaty applies to Brazilians present in the U.S. and citizens of the U.S. present in Brazil.  But see Mendes Junior Int'l Co. v. Bando Do Brasil, S.A., 15 F.Supp.2d 332 (S.D.N.Y. 1998) (relying on Blanco and finding that the Brazil treaty provides full deference to the Brazilian plaintiff, without considering whether the Brazilian plaintiff must be present in the U.S.).  Nothing within this provision suggests that Brazilian plaintiffs, like plaintiffs here, not located in the territory of the U.S., may bring suit within the latter's courts for events that took place abroad on equal footing with citizens of the U.S., or vice versa.  Plaintiffs are therefore entitled to only the reduced deference afforded an ordinary, foreign-citizen plaintiff.

This reduced level of deference is further eroded by plaintiffs' decidedly inconvenient residence in relation to this forum.  It is undisputed that none of the victims of the crash nor any of the beneficiaries of their estates reside in the U.S.  There is no evidence or even a suggestion that any of the foreign plaintiffs or their decedents have even visited the U.S.

However, it is also undisputed that defendants are all amenable to suit here, and this district is the home forum of the Legacy pilots and ExcelAire.  Although a plaintiff's choice of a defendant's home forum does not, by itself, support a presumption of convenience, substantial deference may still be appropriate when that choice is made to obtain jurisdiction over a defendant.  Norex, 416 F.3d 146.  But such deference is not automatically given.  A plaintiff's "choice of the defendant's home forum provides a much less reliable proxy for conveniens," than plaintiff's choice of his own home forum.  Pollux, 329 F.3d at 74.  "Accordingly, a plaintiff's choice to initiate suit in the defendant's home forum  – as opposed to any other where the defendant is also amenable to suit  – only merits heightened deference to the extent that the

plaintiff and the case possess *bona fide* connections to, and conveniens factors favor, that forum." Id. Defendants in these cases may also be subject to jurisdiction in Brazil,[3] where a number of potentially responsible parties not named as defendants, and not subject to U.S. jurisdiction, are subject to jurisdiction. Plaintiffs do not have *bona fide* connections to the U.S. and although the cases do, the convenience factors, as discussed below, favor the Brazilian forum.

The availability of witnesses and evidence swings both ways, but on the whole detracts slightly from a conclusion of a high degree of deference. The plane carrying the victims was owned and operated by a Brazilian airline while within the jurisdiction of Brazilian air traffic control, and, not surprisingly, significant evidence from those and other Brazilian entities may not be available in the U.S., but would likely be available in a Brazilian forum. On the other hand, the only key evidence that plaintiffs point to that may not be available in Brazil is the live testimony of the pilots, who are also defendants in these cases. There is no question that the pilots' testimony is crucial to these cases, but the testimony of the Brazilian air traffic control officers who directed the two planes immediately prior to the accident may be equally important. Letters rogatory may be used to attempt to take evidence in either forum, but, as discussed below, the Brazilian government entities, such as the Brazilian ATC, may refuse to comply on sovereign immunity grounds. In short, litigation in either forum would be disadvantaged by the absence of either Brazilian ATC or by the pilots, but only the Brazilian ATC, and certain other Brazilian entities, might not provide evidence at all, and that detracts from the degree of deference.

---

[3]  Defendants' concessions to submit to Brazilian jurisdiction are appropriately considered in the second step of the forum non conveniens analysis which determines if there is an available and adequate alternative forum, it is not a valid consideration in determining deference. Norex, 416 F.3d 146.

Another factor is the cost associated with transportation of evidence and translation costs. Plaintiffs understandably have attempted to tailor their claims in this Court to actions taken by defendants that for the most part occurred in the U.S.  However, at its core, these cases are about what caused the accident and who, if anyone, should be liable for it. That reality means evaluating testimony and documents from Brazil.  As detailed below, this factor ultimately favors neither forum, and thus fails to impact the deference afforded plaintiffs' choice of forum.

Taken as a whole, the <u>Iragorri</u> factors do not move plaintiffs to any higher level of deference than they started with based on their foreign-citizen status.  If anything, plaintiffs are entitled to an even lesser amount of deference than the ordinary foreign-citizen.  Thus, where, as here, plaintiffs' choice of forum is granted a lesser degree of deference, "'the action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the [alternate] forum significantly preferable.'"  <u>Bigio v. Coca-Cola Co.</u>, 448 F.3d 176, 179 (2d Cir. 2006) (quoting <u>Iragorri</u>, 274 F.3d at 74-75).  Having set the bar which defendants must hurdle, the Court now turns to the question of whether Brazil is an available and adequate forum for these cases.

## IV.    <u>Available and Adequate Forum</u>

"'The requirement of an alternative forum is ordinarily satisfied if the defendant is amenable to process in another jurisdiction, except in rare circumstances when the remedy offered by the other forum is clearly unsatisfactory.'"  <u>Varnelo v. Eastwind Transport, Ltd.</u>, No. 02 Civ. 2084, 2003 WL 230741, at *13 (S.D.N.Y. Feb. 3, 2003) (quoting <u>Murray</u>, 81 F.3d at 292 (quotation omitted)).  Therefore, to be both available and adequate, defendants must be amenable to service of process in the alternative forum and the forum must permit litigation of the subject matter of the dispute.  <u>Pollux</u>, 329 F.3d 64 (citing <u>Piper</u>, 454 U.S. 235, 102 S.Ct. 252).

Defendants can satisfy the first prong of the test – availability – by agreeing to submit to the jurisdiction of the courts of the alternate forum for purposes of the present dispute, see Pollux, 329 F.3d 64 (England was an available forum where defendant agreed to submit to the jurisdiction of English courts as a condition of dismissal); Mendes, 15 F.Supp.2d 332 (finding Brazil an available adequate forum); Manela v. Garantia Banking Ltd., 940 F.Supp. 584 (S.D.N.Y. 1996) (Brazil is an available forum where defendants have agreed to consent to Brazilian jurisdiction upon dismissal); Da Rocha, et al. v. Bell Helicopter Textron, Inc., 451 F.Supp.2d 1318 (S.D. Fla. 2006) (holding that Brazil was an available alternative forum based upon defendant's consent to Brazilian jurisdiction), and if the courts have jurisdiction over the parties, they need not consent to jurisdiction to satisfy this prong.  Pollux, 329 F.3d 64. However, this Court can only dismiss if it is convinced "litigation may be conducted elsewhere against all defendants," Jota v. Texaco, Inc., 157 F.3d 153, 159 (2d Cir. 1998) (quotation omitted).  Here, all defendants except the two Legacy pilots have signed declarations consenting to jurisdiction in Brazil, and therefore defendants are left only to demonstrate that a Brazilian court has jurisdiction over the Legacy pilots.

Experts of both parties agree that Article 88 of the Brazilian Code of Civil Procedure gives Brazil grounds for asserting subject matter jurisdiction and personal jurisdiction over all defendants in these cases – including the Legacy pilots – because Art. 88 recognizes that Brazil has jurisdiction when (1) the defendant is domiciled in Brazil, (2) an obligation is to be performed in Brazil, or (3) a "action is originated from a fact or an act [that] occurred in Brazil." Plaintiffs contend that it is unclear whether Brazil will exercise that jurisdiction, arguing that the acts of, for example, creating the avionics equipment, are what originated the cases and those actions did not take place in Brazil.  However, that argument is not applicable to the Legacy

pilots as their actions that allegedly caused the accident unquestionably occurred in Brazil.  See Value Partners S.A. v. Bain & Co., Inc., No. 98 Civ. 1562, 1998 WL 336648 (S.D.N.Y. June 22, 1998) (granting forum non conveniens dismissal and finding that because the bulk of activity occurred in Brazil, it appeared certain that Brazil would exercise jurisdiction over under Article 88); De Paula v. Jackson, No. 94 Civ. 7020, 1995 WL 702481 (S.D.N.Y. Nov. 29, 1995) (Brazilian court determined it had jurisdiction because accident occurred in Brazil).  Moreover, a Brazilian federal court has already ruled that it has jurisdiction over a criminal proceeding related to the accident, including jurisdiction over the Legacy pilots, on the basis of the place of the alleged crime.  Having reviewed the declarations submitted in support of and in opposition to defendants' motions, the Court finds that it is a near certainty that Brazil will exercise jurisdiction over the Legacy pilots, given Brazil's interest in the suit, the plain meaning of the statute, and the jurisdiction already exercised over the Legacy pilots by a Brazilian court.  In any event, the Court will make this dismissal conditioned on jurisdiction being exercised by Brazil.  See Schertenleib v. Traum, 589 F.2d 1156 (2d Cir. 1978).

As to the second prong – adequacy – plaintiffs make two principal arguments why Brazil is not adequate.  First, they contend that this litigation would be highly "fragmented" in Brazil. Second, they contend that it would be protracted.  "[D]ue regard for international comity suggests that courts should not label the proceedings of a foreign tribunal 'clearly unsatisfactory' absent some basis for such conclusion."  Lu v. Air China Int'l Corp., No. 92 Civ. 1254, 1992 WL 453646, at *2 (E.D.N.Y. Dec. 16, 1992).  Thus, in order for plaintiffs "to establish successfully the inadequacy of an alternative forum, [they] must 'plainly demonstrate that [they are] highly unlikely to obtain basic justice [in the foreign jurisdiction].'"  In re Ski Train Fire in Kaprun Aus. on Nov. 11, 2000, 499 F.Supp.2d 437, 443 (S.D.N.Y. 2007) (quoting Leon v. Million Air, Inc.,

251 F.3d 1305, 1312 (11th Cir. 2001) (quotation omitted)).  Here, the arguments offered by plaintiffs are not sufficient to deem Brazil inadequate.

In support of plaintiffs' fragmentation argument, plaintiffs' expert concludes that consolidation is possible in Brazil, but almost never occurs in practice.  In support, he cites multiple examples of mass litigations that remained fragmented.  Plaintiffs also point out that the five lawsuits filed against Gol in Brazil at the time of supplemental briefing were all in Rio state courts in front of separate judges.  Defendants' expert disagrees, concluding that whether consolidation occurs is up to the parties and no judge will impede the plaintiffs' wishes to consolidate cases in a forum of competent jurisdiction.  Neither expert offers much support for their conclusion about whether consolidation will occur, but they are in agreement that consolidation is possible.

In any event, "[s]ome inconvenience or the unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternate forum inadequate."  Blanco, 997 F.2d at 982.  In Aguinda v. Texaco, Inc., 303 F.3d 470, 478 (2d Cir. 2002), for example, the Second Circuit ruled as follows:

> Ecuadorian courts do not recognize class actions. On the other hand, Ecuador permits litigants with similar causes of action arising out of the same facts to join together in a single lawsuit. While the need for thousands of individual plaintiffs to authorize the action in their names is more burdensome than having them represented by a representative in a class action, it is not so burdensome as to deprive the plaintiffs of an effective alternative forum.

This Court similarly finds that Brazil is adequate regardless of whether the cases stemming from the accident are likely to be consolidated there.

Plaintiffs' expert also contends that the appeals process makes litigation in Brazil unduly lengthy, although he does not offer an estimated time period for their resolution.  Plaintiffs point to one aviation case filed in Brazil, after being dismissed from the U.S. on the ground of forum

non conveniens, that is still not fully resolved today, approximately 11 years after it was filed in the U.S., and they cite to a June 2007 article in Brazil's "main national newspaper" entitled "Appeals Can Delay Suits by Up to 40 Years:  Judges Recognize Delay is the Main Factor for Impunity."  Defendants' expert counters that the instant cases will only take one or two years to resolve in Brazil.  In support, he points to recent reforms regarding appellate abuse, which provide punishment for unwarranted appeals.  He also points to statistics indicating that Rio's state courts are deciding a higher number of cases each year than in prior years.

In USHA (India), Ltd. v. Honeywell Int'l, Inc., 421 F.3d 129 (2d Cir. 2005), plaintiffs argued that India was not adequate because it would take 10-15 years to resolve the case there; defendant's expert disagreed and estimated 2-3 years.  The Circuit found that the defense expert did not properly account for all circumstances, but because the private and public interest factors clearly indicated that India was more convenient, rather than reversing the district court's dismissal the Circuit directed the parties to proceed in India for 18-25 months, at which time the district court would revisit whether India was adequate or suffered from too much delay.  In Braz. Inv. Advisory Serv. Ltd. v. United Merchants & Mfg., Inc., 667 F.Supp. 136 (S.D.N.Y. 1987), in contrast, plaintiffs' expert suggested it would take 5-8 years to reach final judgment, the defendants' expert estimated 1.5 to 2 years, and the court still found Brazil to be an adequate, available forum.

Thus far, the actions against Gol have moved at the pace predicted by defendants' expert; at least one case has been resolved on the merits by an appeals court, and forty-one cases have been resolved overall according to one defendant's expert.  Moreover, "delay alone is rarely considered sufficient to deprive a plaintiff of an adequate forum."  Bank of Credit and Commerce, 273 F.3d at 248.  The Court therefore finds that any delay in Brazil is sufficiently

minimal, relative to the U.S., that Brazil should be considered an adequate forum.  This determination is consistent with several other courts that have found Brazil to be an available and adequate forum for a variety of claims.  Mendes, 15 F.Supp.2d 332 (breach of contract to provide financing for construction project); Value Partners, 1998 WL 336648 (tortious interference with contract, aiding and abetting conspiracy, theft of trade secrets and unfair trade practices); Manela, 940 F.Supp. 584 (securities fraud and breach of contract); Braz. Inv. Advisory Serv., 667 F.Supp. 136 (unpaid commissions); de Melo v. Lederle Lab., 801 F.2d 1058 (8th Cir. 1986) (strict liability, negligence, failure to warn, breach of warranties, and fraudulent concealment); Da Rocha, 451 F.Supp.2d 1318 (claims for wrongful death and product liability based upon helicopter crash).

## V.     Balance of Private and Public Interest Factors

### A.     Private Interest Factors

Because "plaintiffs and defendant[s] reside in different countries, any forum will be inconvenient for someone."  Int'l Equity Inv., Inc. v. Cico, 427 F.Supp.2d 503, 506 (S.D.N.Y. 2006).  Therefore, "the private interest factors turn on which forum more conveniently can dispose of the litigation."  Id.  In order to determine whether an action should be dismissed on the basis of forum non conveniens, this Court must balance the convenience of the parties and witnesses, based on the following "private" factors:

> [1] the relative ease of access to sources of proof; [2] the availability of compulsory process for attendance of unwilling witnesses; [3] the cost of obtaining attendance of willing witnesses; [4][i]ssues concerning the enforceability of a judgment; and [5] all other practical problems that make trial of a case easy, expeditious, and inexpensive-or the opposite.

Murray, 81 F.3d at 294; (citing Gilbert, 330 U.S. 501, 67 S.Ct. 839).

"To examine 'the relative ease of access to sources of proof,' and the availability of witnesses, the district court must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action." Van Cauwenberghe v. Biard, 486 U.S. 517, 528, 108 S.Ct. 1945, 1953 (1988) (citation omitted).  Here, Gol, Brazilian ATC, A-Tech, and, possibly, Embraer — entities centrally involved in the accident — are not subject to personal jurisdiction in this forum, and therefore defendants will be unable to join these entities in defending the suit if the actions remain here.   In contrast, all of the current defendants, as well as the Brazilian entities not subject to personal jurisdiction in this forum, are either subject to jurisdiction in Brazil or have consented to jurisdiction there, with the exception of the Legacy pilots who have not consented to jurisdiction in Brazil, but who appear to be subject to jurisdiction there anyway.  This difference in jurisdiction over potentially liable entities weighs strongly in favor of dismissal. See, e.g., Piper, 102 S.Ct. 252, 454 U.S. 235 (upholding dismissal where, in the U.S. forum crucial witnesses were beyond the reach of compulsory process, and defendants would not be able to implead potential Scottish third-party defendants, it would be unfair to make the defendants proceed to trial in the U.S.); Allstate Life Ins. Co. v. Linter Group Ltd., 994 F.2d 996, 1002 (2d Cir. 1993) (noting that litigation in the U.S. without all of the interested parties "creates a risk of inconsistent judgments"); Crosstown Songs U.K. Ltd. v. Spirit Music Group, Inc., 513 F.Supp.2d 13, 17 (S.D.N.Y. 2007) ("[i]t would be unfair to require defendant to litigate here without the opportunity to bring in parties and witnesses who are critical to its setoff defense").

The parties may also be unable to compel testimony and evidence in the U.S. from Brazilian entities.  Defendants bear the burden on their motion to show that witnesses are

unwilling to testify or provide evidence and that this Court would lack the power to compel their

testimony, see Mendes, 15 F.Supp.2d 332; Manela, 940 F.Supp. 584, but they can carry this

burden by providing circumstantial evidence, for example, that an ongoing "'criminal

investigation provid[es] a major disincentive to voluntary testimony,'" Duha v. Agrium, Inc.,

448 F.3d 867, 877 (6th Cir. 2006) (quoting First Union Nat'l Bank v. Banque Paribas, 135

F.Supp.2d 443, 450 (S.D.N.Y. 2001)).

      If these cases are litigated in Brazil, the parties will likely have access to all Brazilian

entities, and witnesses and evidence under their control, because unwilling witnesses and

evidence in Brazil can be compelled by the Brazilian courts.  Plaintiffs note that testimony in

Brazil from witnesses in a domicile in a different place than the court will likely be by "letter

precatory" rather than by live testimony, but even assuming that is the case, the testimony is still

available.  The parties will also have the same access to all U.S. parties, and witnesses and

evidence under their control – apart from the Legacy pilots – that they would in the U.S., because

defendants have agreed to it as a condition of dismissal.  Unwilling witnesses and evidence can

be obtained by letters rogatory, although no such witnesses or evidence have been identified

apart from the Legacy pilots who have agreed to testify by letters rogatory and pursuant to 28

U.S.C. § 1782.

      In the criminal proceeding underway in Brazil, the pilots litigated whether they had to

testify in person in Brazil.  Originally ruling that they must appear and testify in person, in early

March the Brazilian federal judge overseeing the criminal case *sua sponte* reversed himself and

directed that, pursuant to the Mutual Legal Assistance Treaty between Brazil and the U.S., the

pilots could be examined by way of written questions in the U.S. and need not come to Brazil to

testify.

If these cases are litigated in this Court, the parties will not have access to unwilling Brazilian entities, witnesses and evidence, other than through letters rogatory.  Given the pending criminal investigations in Brazil and their potential liability, it can be expected that the Brazilian entities will not be willing.  Moreover, defendants assert that Brazilian ATC and other parts of the Brazilian government may refuse to respond to the letters rogatory on sovereignty grounds.  Plaintiffs concede the ground exists, but one of their experts states that he expects it would not be used.  In addition, the SIVAM defendants contend that because SIVAM is part of the national security infrastructure of Brazil, their contract with SIVAM expressly bars disclosure of what Brazil deems to be classified or national security information, and calls for any disputes concerning its provisions to be heard in the Brazilian courts pursuant to Brazilian law.

The parties cannot know what the Brazilian government entities or Brazilian courts will do, but the Court finds the defendants' expert convincing in his view that the government entities may very well refuse to provide testimony for use in a U.S. forum.  On the whole, this Court's inability to compel testimony or evidence from potentially unwilling witnesses located in Brazil, compared to the Brazilian courts' likely access to all evidence, weighs in favor of dismissal.

Ease of access to sources of proof, assuming the proof is available in both forums, is another factor.  The evidence in these cases consists of witnesses, documents, and equipment from the entities described in the background section of this decision and order.  Not surprisingly, the evidence from the Brazilian entities is almost entirely located in Brazil, the evidence from the U.S. defendants is located primarily in the U.S., and there will be extensive costs associated with transporting and translating evidence and witnesses for use in either forum.  Located in Brazil is the Boeing wreckage and accident site; Brazilian ATC's evidence; CENIPA's investigation evidence including the Legacy's avionics equipment, transponder,

TCAS, the Flight Data Recorders and Cockpit Voice Recorders from both aircraft, and recordings of interviews with pilots conducted immediately after the accident; damages evidence; Embraer's evidence; A-Tech's evidence; Gol's evidence; the Legacy jet components; and SIVAM's evidence.  Located in the U.S. is ACSS's evidence, ExcelAire's evidence, Honeywell's evidence, the Legacy Pilots' evidence, and the Legacy jet.  Located in part in Brazil and in part in the U.S. is Amazon Tech's evidence, Lockheed's evidence, Raytheon's evidence, and eyewitnesses to the accident.

On the whole, this factor is a wash; litigation in either forum will require significant costs associated with transporting and translating available evidence not located in the forum.

Plaintiffs contend that they may have problems enforcing judgments obtained in Brazil against U.S. defendants.  In support of their argument, they submit a declaration outlining the difficulties faced by the plaintiffs in the TAM Airlines case in which, after successfully having the case transferred to Brazil, the defendants refused to pay a judgment entered by the Brazilian court.  However, any difficulty ordinarily encountered in enforcing Brazilian judgments in the U.S. is not present in these cases because the U.S. defendants have all agreed to pay any final, post-appeal judgment awarded against them by a Brazilian court and dismissal of these actions will be conditioned on defendants' agreement to recognize such a judgment.

As detailed above, plaintiffs also argue that litigation in Brazil will be fragmented among many courts, creating duplicative work and costs for all parties, and will threaten to drag out the litigation to the point where relief may never be obtained.  This fact weighs against dismissal but it is tempered by the possibility of consolidation (which both sides' experts agree is possible), the civil litigation against Gol already underway in Brazil – moving  at a relatively brisk pace and consisting only of determining damages amounts – and the possibility that a finding of liability

against defendants in the U.S. would lead defendants to institute proceedings in Brazil to seek

contribution from those entities not amenable to jurisdiction in the U.S.

**B.** **Public Interest Factors**

The Gilbert "public interest" factors address issues of judicial economy and the efficient

resolution of disputes in determining whether a case should be dismissed for forum non

conveniens.  Specifically, the public interest factors that a court must consider are:

> [1] the administrative difficulties flowing from court congestion; [2] the local
> interest in having controversies decided at home; [3] the interest in having a trial
> in a forum that is familiar with the law governing the action; [4] the avoidance of
> unnecessary problems in conflict of laws or in the application of foreign law; and
> [5] the unfairness of burdening citizens in an unrelated forum with jury duty.

Murray, 81 F.3d at 293 (citing Gilbert, 330 U.S. 501, 67 S.Ct. 839).

In these cases, there are no "administrative burden[s] flowing from court congestion,"

because this Court can accommodate these cases on its calendar, Peregrine Myanmar Ltd., v.

Segal, 89 F.3d 47 (2d Cir. 1996), and there is no indication of significant court congestion in the

other U.S. forums or in the Brazilian courts.

Brazil's interest in resolving this controversy is obvious, and it suffices to note that the

crash of Gol flight 1907 was the largest aviation accident in Brazil's history at the time; it has

spawned governmental inquiries, criminal charges, mass media coverage, and even an air traffic

controllers strike; and Brazil's Federal Supreme Court stated in a decision installing a

Parliamentary Investigative Commission that the accident "hurt so much the superior interest of

the citizenry that the right to investigate the grave consequences affecting Brazil's air traffic

control system is one that cannot be taken away from Brazil."  In addition, to the extent Brazil's

interest is tied to having its citizens compensated, that will be satisfied in the U.S. only if

plaintiffs prevail on the issue of liability, a hurdle not present in the litigations against Gol in Brazil.

That said, the U.S. and this district have an interest in these cases as well.  The Legacy pilots live in and are licensed to fly in New York; ExcelAire hired and trained the Legacy pilots in New York where it is incorporated and where its place of business is located; and the litigation implicates the design of products manufactured in the U.S., by U.S. companies, that are installed in many U.S. aircraft flying in U.S. airspace.  The U.S. interest is demonstrated by the FAA's and NTSB's participation in the CENIPA run investigation into the accident, and the safety warnings regarding the avionics systems designed by Honeywell and ACSS that both agencies have issued.

However, courts have repeatedly exercised their discretion to hold that a defendant's manufacturing activities within the U.S. do not tilt the public interest in favor of retaining jurisdiction where overseas events are the primary catalyst for litigation initiated by foreign plaintiffs.  See, e.g., Piper, 454 U.S. 235, 102 S.Ct. 252 (airline crash in Scotland with primarily British passengers); Lueck v. Sundstrand Corp., 236 F.3d 1137 (9th Cir. 2001) (airline crash in New Zealand with New Zealand passengers); Baumgart v. Fairchild Aircraft Corp., 981 F.2d 824 (5th Cir. 1993) (airline crash in Germany with German passengers).  Here, there can be no question that overseas events were the primary catalyst for this litigation brought by foreign plaintiffs.  Nor can there be any question that the U.S. interest in this litigation pales in comparison to Brazil's, and that this factor weighs in favor of dismissal.

Although the local interest in this matter is much stronger in Brazil than in the U.S., these cases are not so unrelated to the U.S. that it would be unfair to burden its citizens, in the districts in which these cases were commenced, with jury duty on this matter.  The cases involve

companies headquartered in the U.S., two pilots who live in the U.S., and avionics equipment created in the U.S. and regularly used by aircraft flying throughout the U.S.  See, e.g., Genpharm Inc. v. Pliva-Lachema a.s., 361 F.Supp.2d 49 (E.D.N.Y. 2005).  Thus, in weighing the public interest, this factor does not support dismissal.

Another consideration is the public interest in having the court at home with the applicable law and in avoiding unnecessary problems in conflict of laws or application of foreign law.  It is premature to make a definitive choice of law ruling because the litigation is at a preliminary stage and because it is not yet clear that there is a conflict between the relevant state laws and Brazilian laws, see, e.g., Curley v. AMR Corp., 153 F.3d 5 (2d Cir. 1998) (noting that under New York's choice of law principles, a court will not undertake a choice of law analysis if there is no conflict).  What may be said is that at a minimum, this Court would likely have to determine what Brazilian laws would apply and compare them to applicable state laws to determine whether conflicts of law exist.  There is at least some likelihood that this Court, if it retained the cases, would be obliged to apply Brazilian law to part of or to the entire case – New York, for example, uses an "interest analysis" choice of law test, and the jurisdiction with the greatest interest in this matter is Brazil – and this factor cuts to some degree in defendants' favor. Value Partners, 1998 WL 336648.  Moreover, in multi-district litigations, the transferee court applies the substantive state law, including the choice of law rules, of the transferor forum. Menowitz v. Brown, 991 F.2d 36 (2d Cir. 1993) (citing Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805 (1964)).  Thus, if dismissal is denied, this Court would need to conduct multiple conflict of laws analyses, and, if conflicts exist, apply the choice of law tests of the various states in which these actions were originally commenced.  As the Supreme Court has instructed, the

avoidance of such "unnecessary problems in conflict of laws" supports forum non conveniens dismissal.  Piper, 454 U.S. at 241 n.6, 102 S.Ct. at 258 n.6.

**C.      The Balance of Conveniences**

At the very least, the Supreme Court's decision in Piper stands for the proposition that it is within this Court's discretion to dismiss these cases on forum non conveniens grounds.  454 U.S. 235, 102 S.Ct. 252.  In Piper, a small commercial airplane crashed in the Scottish Highlands killing the pilot and five passengers.  The decedents and their heirs were all Scottish.  Wrongful death actions were brought both in Scotland and in the U.S.  The defendants in the U.S. suit were the manufacturer of the plane and the propeller.  In the U.S. forum, crucial witnesses were beyond the reach of compulsory process and defendants would not be able to implead potential Scottish third-party defendants; the district court concluded that it would be unfair to make the defendants proceed to trial in the U.S.  The Supreme Court upheld the district court's dismissal of the case on forum non conveniens grounds.  The facts here are nearly identical to those in Piper, right down to the witnesses and potentially liable parties beyond the reach of the U.S. forum.   Although, as Piper teaches, each motion based on forum non conveniens must be taken on a case-by-case basis, I believe that Piper is a persuasive guide to the Court's analysis here.

The private and public interest factors at issue here fall on both sides of the aisle, and down the middle, but, as in Piper, the important factors of lack of jurisdiction in this forum over potentially liable parties and the lack of compulsory process over witnesses and evidence in Brazil, together with other considerations, swing the balance sufficiently to make this forum "genuinely inconvenient" and a Brazilian forum "significantly preferable."

VI.     **Motion to Stay Discovery**

Defendants' motions for a stay of discovery pending resolution of the forum non conveniens motions are denied as moot.

**CONCLUSION**

For the reasons set forth above, Honeywell's motion to strike is GRANTED IN PART AND DENIED IN PART, defendants' motions for a stay of discovery are DENIED, and defendants' motions to dismiss based on forum non conveniens are GRANTED.

Although defendants have agreed to make certain concessions if the Court grants the motion, to properly protect plaintiffs' interests, this dismissal is made subject to the following conditions:

1.      Should the Brazilian courts refuse to exercise jurisdiction, or the defendants refuse to submit to jurisdiction exercised by the Brazilian courts, plaintiffs may move in this Court to reopen these actions;

2.      defendants shall not raise any statute of limitations defense not available when these actions were commenced, that might prevent these actions from proceeding in Brazil, provided that plaintiffs commence such actions, if not already commenced, within a period of 120 days after the date of this Order;

3.      upon request by plaintiffs, defendants shall produce any witnesses or documents within their control presently located beyond the subpoena power of the Brazilian court, and such witnesses will appear for live testimony in Brazil if required by the Brazilian court, with the exception of the Legacy pilots who may appear by videotaped or transcribed deposition, or letters rogatory if preferred by plaintiffs or the Brazilian courts;

    4.    defendants shall pay any post-appeal judgment awarded against them by a

Brazilian court and shall not oppose any judgment entered by a Brazilian Court that has become

enforceable under Brazilian law.

**SO ORDERED.**


                                             /s/ Brian M. Cogan
                    _____
Dated: Brooklyn, New York                  U.S.D.J.
       July 2, 2008